Good afternoon. May it please the Court, Gail Ivins appearing on behalf of Appellant Robert Fowler. This is certainly not the usual federal search warrant. They're usually much more robust. So this search warrant certainly was not the normal thing we look at with informants and wiretaps and all the lovely stuff that federal prosecutors usually put together for the magistrate judge. And because of that, we're here to argue about whether this search warrant demonstrated probable cause. And if it did not, whether Leon Goodfaith can excuse that failure. Counsel, don't forget to talk about Leon. I will not forget to talk about Leon, Your Honor. Thank you. The argument below and the argument here is that the warrant itself was so facially deficient that the officer could not rely upon it as authorizing the search of the Camry. And I think it's important to note that that's the place that was being searched. This wasn't just sort of a should we detain him, should we arrest him, should we search the apartment. Trial counsel dropped that issue, the apartment issue, and only focused on whether there was probable cause to search the Camry. And there was very limited evidence set forth in that search warrant with respect to the Camry. Essentially, on the 6th of April, Mr. Fowler was seen in the Camry with Bridges and Bingman, two of his co-defendants, taking them from the apartment complex next on 6th to the Vagabond Inn, entered the motel room, and surveillance was terminated. So that's what we know. We don't have more information. How long they stayed, whether they brought something out, whether they met other people there. We don't have any other information because surveillance was terminated. I thought the location was a known drug stash house. No, it was a speculated stash house. I mean, every time anyone was anywhere, the officer said, drug dealers use other locations as stash houses. But there was no evidence of prior drug seizures at any of those different locations that they were seen at. The evidence of drugs was Bridges' prior arrest in January with Ms. Bingman, where they were discovered with drugs and they were arrested, and that all happened while Mr. Fowler was still in prison. Admittedly, the fact that he's just seen driving around on these occasions isn't particularly much, but what do you make of the addition of on April 7th, where he is the one who gets out and seems to be looking for someone and then meets up with Ms. Neff. So, that sort of takes him from just being along for the ride by a standard driver to now he's starting to do something, and she's a known drug dealer. So, he's starting to show up at a lot of places, but not just passively. Why isn't that at least enough for good faith, even if it might have been dicey for probable cause? I mean, I think there's two things. And obviously, you know, I mean, I feel like this case actually does sort of fall right in between the cases where everyone does absolutely nothing and people have found no, beyond good faith, and people do a little bit, like in Hilliston or Fowley, and they find yes. And so, this case is a little bit in between exactly because of what Your Honor has pointed out, which is that the second observation of Mr. Fowler, he gets out of the, he drives Mr. Bridges from an address that we know nothing about other than that's where they drove from to Next on 6th, the same apartment where he drove him from there to the vagabond end. And Mr. Fowler gets out and goes to the front door, and it is not clear, I don't think, from the warrant, whether he even goes in. You know, I mean, he goes to the front door and comes back, and he apparently is looking for someone. Ms. Neff comes over and talks to Mr. Bridges, who's in the passenger seat. And so, even without Leon, the standard is very low. It's just fair probability. It's more probable than not. And we've carved out an area where the police thought there was a fair probability, and we thought it didn't meet the standard, and that was in the hanging around cases. We had, we kept getting hanging around cases where the guy is sitting in the company of dope dealers, and he might just be saying hello to kids he knew in high school, and they're standing on the corner selling dope, and he doesn't have anything to do with dope. But this is more than hanging around. This is driving dope dealers around for what look like apparent transactions, and it's not quite driving them to the deal. He hops out, makes the deal, and then gets back in the car, but it's pretty close. I wonder if there isn't fair probability even without Leon. And I can see why Your Honor posits it that way, and I think that the distinction for this case is that the two hand-to-hand sales that are observed happen when my client is nowhere near the action. He's not like the case where he shows up and then the drugs are sold, where you can make the inference that he's the one supplying the drugs. None of that happens. The hand-to-hand sale on April 7th happened several hours later by Bridges. You know, where my client's driving, you know, around in the takes-off, and surveillance is again terminated, so we don't know what happened. The hand-to-hand sale that's observed happens, what, four hours later? So in the warrant, was there any recounting of any instance where Fowler was present, where there was a furtive hand-to-hand transaction? It's just driving from one location to another, and then the getting out and… And taking off at a high rate of speed. And the high rate of speed. Absolutely. And so he is, you know, with Bridges. He's with Bingman, known drug dealers according to the warrant. He's the driver of the car when Bridges talks to Neff, alleged in the warrant to have, you know, a felony drug record. No allegation he has any drug record in the warrant. Okay. So let's say that we agree with you that the probable cause was lacking. Judge Kleinfeld asked you to be sure to address it. Yes. And it seemed to me you conceded that this case falls between the two poles. Why wouldn't a reasonable officer be entitled to rely on the fact that a neutral magistrate looked at this and said there was probable cause? I think because there really is absolutely nothing in this warrant that shows he was where the drugs were, and they wanted to search the Camry. There's just no suggestion in any allegations in the warrant that he is supplying the drugs or dealing the drugs. I mean, so they want to. Yes. I've got a problem with the way you're articulating that. You're articulating it as though every policeman has to be kind of a court of appeals for the magistrate who issues the search warrant. And to me, that's not what Leon says. Leon reasonably says if there's a search warrant, the cop can just do what he's told. The search warrant is always in the form of a command from the court to the policeman. You shall make this search and you shall make this seizure. And Leon just has kind of a loophole where the cop has lied to the judge to get the warrant or the warrant is evidently and self-evidently nonsense. But in general, the idea, Leon, is you go to a judge, go to a magistrate, get a warrant, and you can do the search because we want to encourage policemen to go and get a search warrant instead of just making their own judgment. And you're flipping it on its head. He has to read the affidavit, read the warrant, and say, hmm, could a reasonable magistrate think there's enough probability here to justify this? I don't understand Leon that way. I mean, the argument in the court below and on appeal is that the warrant on its face, which was drafted by the officer who did do the search, so it wasn't like he was handed the warrant. He drafted the warrant. He put in, you know, what he could about Fowler, I mean, which was very little, which was we saw him, we saw him, and then there's a lot of, you know, drug dealers use stash houses, and I think this could be a stash house, and drug dealers, you know, do this, and I think this could be this. It's just there is really no connection, and I think a reasonable officer would not think there was one. Well, like Judge Wofford said, the one thing a policeman knows for sure is a neutral magistrate. It's not part of the police force looked it over and said, yep, there's enough here. Absolutely, Your Honor, and there is. If that's always the case, then there's no third exception for Leon. I mean, either it's facially, you know, not showing probable cause such that the officer would know that, or that exception doesn't exist. So, I mean, I think this case comes as close as we've seen in a very long time in this court. There aren't a lot of precedental cases with facts like this in the Ninth Circuit, but there are a lot of cases where there's just no connection, and I am out of time. So, I will stop there. Do you have a governmental objection? Yes, let's hear from the government. Good afternoon. May it please the Court. Elia Herrera on behalf of the United States. This court can affirm if under Leon the officers relied in good faith on the warrant, and they did because there was at least a culpable argument that there could be evidence of drug trafficking in Fowler's car. This court can affirm both on the basis that one, Fowler's actions led to the reasonable inference that he was helping Bridges with his drug dealing, and two, that there was a fair probability there would be evidence of drug trafficking in the Camry because Bridges, a known drug trafficker, was using it as his mode of transportation. It's pretty thin. It looks a lot more like reasonable suspicion than probable cause. I mean, it's suspicious. You'd want to investigate more, but it's enough on its own. I mean, could they have gotten, presumably, you think they could have gotten an arrest warrant based on this and take him into custody with no further investigation just as these kind of driving trips. Your Honor, I would say that in order to look at Fowler's actions, I think it's helpful to look at what is undisputed in this case and what is not an issue, and that is that Bridges was a drug dealer and that there was probable cause as to Bridges. The defense concedes as much, and it's open and brief at page 16. Bingman was a drug dealer. Bridges and Bingman dealt drugs out of a car. Neff was a drug dealer, and it is not disputed. It is not an issue that there was probable cause as to the apartment complex in downtown LA. So if we look at that, Fowler's actions were more than just driving around. This isn't an instance of an Uber driver, an Uber driver that's just picking someone up and dropping them off. If we look at the context of when Fowler picks up Bridges on April 6th, it's 20 minutes, 20 minutes after a suspected drug transaction. He then takes Bridges and Bingham, both known drug dealers, to a motel, Bagabon Inn, and he goes inside with them. So he's not just dropping them off. It's not an instance where I'm at the wrong place at the wrong time. My friend called me. He asked me to, you know, drop them off. No, he goes into the inn with them, and I do think the court, Judge DeWitt was entitled to rely on the 14 years of experience that Detective Brown had where he says that mid-level drug traffickers like Bridges use multiple locations for storage and for sales. So I think it was reasonable to infer that that motel was a potential stash house, just like it was reasonable to infer that Bridges conducted a suspected drug transaction in front of the apartment complex. And not just that, the second day, and I think this is illuminating, the second day Fowler drives Bridges back to the apartment complex. Again, this is a complex where there had been a suspected drug transaction. And he doesn't just drive him back. He gets out of the car. He walks towards the front of the complex, walks back into the car, drives around looking for someone. Then there comes Neff, another drug dealer, and there's a meeting. She goes over to talk to Bridges in Fowler's car, and then they leave. The only thing that happens when they drive over to the apartment complex is that they have a meeting with a drug trafficker. And I think that is enlightening because it shows that this is not someone just driving someone around, having nothing to do with what's going on. He's there with them. He's helping. He's helping Bridges look for Neff, who is a known drug trafficker, and that is not in dispute. And so based on just – I apologize. He's around with bad people and drives them around, and they meet others. It's a bad crowd. He's not just hanging out. I think that, as I said, when he's driving around looking for someone, and then they find Neff, and then they leave, that is a meeting of two known drug traffickers, and he's right there. And if we look at Detective Brown, like I said, he has 14 years of experience, and the court is entitled to rely on that experience. He says that mid-level traffickers like Bridges employ numerous associates to help them transport and distribute drugs. And so if we look at that, if we look at the fact that Fowler was on probation for a firearms offense and Detective Brown also opined that dealers use firearms to protect their money and drugs, then I think it was reasonable to judge DeWitt to think, yes, it's fair. It's fair to look in that car because it's clear that Fowler may be hiding something. There may be something going on with his actions in his close contact with the drug dealers. And the additional point that I want to make is that this is not a case where we say, okay, Fowler might be a drug dealer. Let's look in his car. No. This car was involved. This car was – it had a role, and it was implicated. And that's because Bridges, who everyone agrees is a known drug dealer, is using this Toyota as a means of transportation. He's using it to get picked up after a potential drug transaction. He's using it to be driven to this apartment complex.  Can I ask you just on that point? Yes. If the Toyota is being used mainly to convey the drug traffickers themselves from point to point, why does that give rise to the problem of causing that drug to actually be in the car itself, especially if the car doesn't belong to the actual drug dealers themselves? Yes, Your Honor. In addition to the point I made that I think there's an inference that Fowler is helping, aside from that, I think that there is in the warrant, Detective Brown's opinion, that narcotics dealers will often instill drugs inside of their cars. And then the other thing is that, as Detective Brown pointed out, mid-level traffickers. Yes, I thought that the government's position was not that there was probable cause to believe that Fowler himself was a drug dealer, but rather that he was merely transporting known drug dealers from point A to point B. I would say that there's sort of a double theory here. One is that Fowler is assisting drug dealers with drug trafficking and knowingly assisting them to do so. And then the other one is that sort of regardless of what Fowler's role is, Bridges is using this car for his drug dealing. And that's because of two things. One, drug dealers use multiple locations for their storage and for their sales, and we see Bridges going from one place where there's a suspected transaction to a motel. And then the second thing, as I said, that it's not uncommon for drug dealers to conceal drugs inside of cars. So let me ask you about probabilities for different direction. What I'm thinking about is drug dealer would have to be an idiot to let a perfectly innocent person know all about who he sees and where he goes. So can't an inference be drawn from the fact that the known dealers, in this case, trust Fowler, their driver, with that sort of knowledge that he's in the business with them of letting him know all about how they do business? Absolutely, Your Honor. You know the old joke, Macy's doesn't tell Gimbles and Gimbles doesn't tell Macy's, back when there were two Gimbles and Macy's. I just can't see why somebody in the business would want somebody out of the business to know how he does business and who with. Yes, Your Honor, I don't actually know that joke, but our position is that there's a difference that he did know, that he was in on it, that he was helping with the drug trafficking. The argument that I made about the car and how drug dealers separate their proceeds and their drugs is an additional argument, but what we are leading with is the fact that his close contact over those two days shows that he was in it, that he was involved. Do you think they had enough at that point not only to get the search warrant they got, but they could also have gotten an arrest warrant for Fowler? Your Honor, I think that there was enough to get an arrest warrant, and I think, like I said, it's because not only was he driving them around, I think it's that instance on April 7th where you show that he's clearly helping out with locating, and I think that's the inference that you can make from the warrant that he's helping to locate Ness. And so I think that the issue as to a warrant as to Fowler is a little bit closer than the car, but I do think that it would be there. Why would it be different? Why isn't it the same? I don't see, like I said, because in this case, you could say maybe he didn't know what was going on and his car is being used. Like I said, I don't think that that is the reason. But the whole theory of how the warrant, there was probable cause to extend the warrant of the car, it runs through Fowler. Yes, yes, Your Honor, it does, it does. And it would establish, it's all or nothing, it's either arrest warrant, search warrant. Yes, Your Honor. Because Boatswain would say, you know, well, an arrest warrant might be harder, it's kind of this case. Right, right. No, I mean, as I said, there was probable cause. And like I said, the court can rely on Leon for this, but our argument is that there is probable cause here without Leon, and that is also due to the fact that this court does owe substantial deference to the issuing judge in this case. So for these reasons and for our briefing, unless the court has any additional questions, I have about a minute left, but I'll cede my time. You are over your time. I apologize. Thank you, Your Honor. Thank you very much for your argument. Let's put two minutes on the clock for a vote, please. I'm old enough to know about maces and gimbals, but I'm not going to share that right now. Okay. I do think that it is important. And I think I started with this, that the search warrant is directed at the car. And there is nothing in the warrant that shows that the car was showing up as a supplier of drugs. There is certainly evidence that he's driving this guy around on two separate days. What about the reference by your opposing counsel to almost what seemed like an alternative theory, that the connection of the car could go through bridges? So that's interesting because if you look at Hilton, which is one of the few cases that's sort of somewhat, you know, related to the facts of this case, which was decided while I was taking the bar and told you how old that case is. In that case, the court seemed to think it was important, and I think it was important, that the drug dealer himself drove the guy's car. And they were together and observed for, like, 48 hours. It wasn't just this, like, spot check, spot check. And so that seemed important, and I think that that goes to what the Leon issue is, which is whether the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. And I think the fact that, in this case, Fowler shows up and drives Bridges and his girlfriend Bingham on these two occasions is very different from the cases where they show up and then a drug deal happens. He's not showing up and drugs are being dealt. Was there anything in the warrant about Bridges ever driving the car? Nothing. No, and there are references to other cars, and in those cars, I think the facts are closer. So in this case, they have what they have, and they obviously decided to go with what they had and to ask for this warrant. But as to Fowler, I think they didn't have enough to establish Leon good faith. And unless the court has more questions, I'm going to see if there's any way to get home in this flood. Thank you very much. Thank you. In person, thank you both for your arguments. The kids just argued as submitted.
judges: KLEINFELD, WATFORD, COLLINS